# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs October 26, 2011

## SCOTTY LEE MYERS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Bradley County**
**No. M-10-442     Carroll L. Ross, Judge**

**No. E2011-00883-CCA-R3-PC - Filed February 9, 2012**

The petitioner, Scotty Lee Myers, was convicted of second degree murder, and he received a sentence of twenty-three years in the Tennessee Department of Correction. Thereafter, he filed a petition for post-conviction relief, alleging that his trial counsel was ineffective. The post-conviction court denied the petition, and the petitioner now appeals. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JERRY L. SMITH and D. KELLY THOMAS, JR., JJ., joined.

D. Mitchell Bryant, Athens, Tennessee, for the appellant, Scotty Lee Myers.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; Robert Steven Bebb, District Attorney General; and Stephen Hatchett, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

The proof at trial revealed that the victim, Pamela Lane, was a recovering methamphetamine addict, that she suffered from bipolar disorder and severe depression, and that she had twice attempted to harm herself with a knife. See State v. Scott Lee Myers, No. E2008-00971-CCA-R3-CD, 2009 WL 2503276, at *1 (Tenn. Crim. App. at Knoxville, Aug. 17, 2009). On May 4, 2007, the victim told her mother, Tammy Lane Turner, to report her missing if she did not contact Turner again. Id. Bobby Singleton last saw the victim on the evening of May 4, 2007, when she left Singleton's house with the petitioner, with whom the victim was romantically involved. Id. On May 14, Turner filed a missing person report with the Bradley County Sheriff's Department. Id. While investigating the victim's

disappearance, Detective Jimmy Smith went to the petitioner's residence and discovered the petitioner's ex-wife, Susan Myers, conducting a yard sale. Id. She refused to let Detective Smith into the petitioner's house. Id.

The petitioner was arrested in Bay County, Florida due to "some old bad checks charges." Id. at *2. The officers found two Ruger pistols in the petitioner's truck. Id. at *1. During his arrest, the petitioner told Bay County officers that the victim shot herself under the chin in his laundry room. Id. at *2. The petitioner said that he tried to grab the gun from the victim but that he was too late. Id. Afterward, the petitioner put the victim's body in a garbage can, taped the can closed, and buried it in a graveyard. Id. The petitioner provided a map showing where the body was buried, and Bradley County deputies later found the body at that location. Id.

Bradley County Lieutenant Barry Tharp examined the laundry room crime scene. Id. at *3. He found the victim's blood spattered on the wall and a bottle of bleach in the room. Id. However, he found no blood on the floor and concluded that the floor had been cleaned. Id. Crime Scene Investigator Emily Hamstra analyzed the blood spatter and concluded that the blood drops originated no more than three feet from the floor. Id. Additionally, a section of carpet in the petitioner's garage was missing, and, when the remaining carpet was removed from the garage, police discovered a blood stain on the underside of the carpet. Id.

Dr. Darinka Mileusnic-Polchan performed the autopsy on the victim's body. Id. at *4. It took two hours to cut through the tape on the garbage can to get to the victim's body. Id. The missing carpet section was found inside the garbage can in which the victim was buried. Id. at *5. The autopsy revealed that the victim's cause of death was a gunshot wound and that the manner of death was homicide, not suicide. Id. at *4. The bullet entered the left side of the victim's face near the nostril and progressed "'front to back, left to right . . . either directly or slightly downward.'" Id. The bullet was lodged near the victim's neck in the back of her head. Id. Testing revealed that the victim was shot by one of the petitioner's pistols. Id. at *5.

At the time of the victim's death, the petitioner was being investigated for embezzlement, and the victim had been subpoenaed to testify against the petitioner before the Bradley County Grand Jury. Id. The petitioner said that he believed the victim had refused to testify against him in the embezzlement case. Id. at *6.

The petitioner maintained that he and the victim were romantically involved, that he knew about her history of drug use and mental health problems, and that the victim knew about his criminal history. Id. On May 4, 2007, the petitioner picked up the victim at Singleton's house. Id. They went out and drank alcohol. Id. They returned home and were

joined by the victim's friend, Teresa Cochran, and a male. Id. At the petitioner's house, the foursome drank alcohol and smoked marijuana, and the victim took pills and engaged in sexual activity with Cochran. Id. Between 3:00 and 4:00 a.m., the petitioner and the victim argued, and their guests left. Id. at *7. The petitioner packed a bag, and, as he was leaving, he saw the victim in the laundry room, holding a pistol under her chin. Id. When they started arguing again, he approached the victim to wrest the gun from her. Id. As he approached, the gun went off, he grabbed it, and he threw the gun behind him. Id. The petitioner did not call the police; instead, he placed the victim's body in a garbage can, buried it, and cleaned the laundry room. Id. Cochran testified that she saw the petitioner and the victim argue but that the arguments never became physical. Id. at *8. She said that before she left on the night of the shooting, the petitioner told Cochran that he would not hurt the victim. Id. Additionally, Cochran maintained that the victim did not mention killing herself. Id. The petitioner was found guilty of second degree murder and received a sentence of twenty-three years. Id.

Subsequently, the petitioner filed a pro se petition for post-conviction relief, alleging that his trial counsel was ineffective. Specifically, the petitioner maintained that "[t]he police manufactured evidence and testimony as it is physically impossible for blood splatter to show up behind an alleged perpetrator without a very large void." The post-conviction court appointed counsel to represent the petitioner, but no amended petition was filed. At the hearing on the petition, post-conviction counsel stated that "the thrust of our . . . argument here today [is that] certain things . . . were either done or not done in the . . . trial, and then things . . . to [the petitioner's] way of thinking, were not protected or raised . . . in his appeal of this matter."

The petitioner's trial counsel testified at the hearing that he was the public defender appointed to represent the petitioner.[1] Trial counsel said that he received "open files" discovery, which he reviewed with the petitioner. Trial counsel said that he was privy to the extensive forensic evidence in the case and that he believed some of the tests "were not done in a professional manner." Therefore, trial counsel made a pretrial motion in limine to exclude or limit the testimony of the State's expert witnesses regarding blood spatter evidence. However, that motion was denied. Trial counsel spoke with the petitioner several times about the State's blood spatter evidence. Trial counsel said that he was particularly concerned that the petitioner's conduct after the shooting could have been perceived as inconsistent with suicide, i.e., cleaning the crime scene, evading law enforcement, selling the victim's property in a yard sale, and fleeing to Florida.

---

[1] Trial counsel testified that he was assisted by co-counsel; however, only trial counsel testified at the post-conviction hearing.

Trial counsel acknowledged that he and the petitioner "were not always in agreement on the case" and that the petitioner raised his concerns about counsel with the trial court pretrial. The petitioner had concerns about venue, but trial counsel believed that the pretrial publicity did not warrant a change of venue. Trial counsel further opined that the petitioner's concerns about pretrial publicity were adequately addressed during voir dire.

Trial counsel said that in preparation for trial, he and the petitioner reviewed the petitioner's version of events several times. During these conversations, the petitioner told counsel that after the victim shot herself, the petitioner took the gun, directed it toward his head, and contemplated killing himself. However, the petitioner ultimately abandoned his thoughts of suicide and cleaned up the crime scene. Trial counsel asked the petitioner "why didn't he kill himself." Trial counsel acknowledged that the question was unprofessional and that it had bothered the petitioner. However, counsel said that he feared the jury would "see through [the petitioner's] self-serving testimony" and that he wanted the petitioner to be prepared to testify and explain his actions.

Trial counsel and the petitioner discussed having the murder weapon examined for fingerprints. Trial counsel said that the State was unable to find fingerprints on the weapon. Because the lack of fingerprints did not disprove the petitioner's claim that the victim committed suicide, trial counsel believed that a defense fingerprint expert was unnecessary. Further, trial counsel said that he made a tactical decision to not hire a blood spatter expert due to damage done to the blood spatter evidence by the petitioner's cleaning the crime scene.

Trial counsel discussed with the petitioner the issues raised in the motion for new trial. Therefore, counsel did not specifically discuss those issues with the petitioner before raising them on direct appeal. Trial counsel said that petitioner wanted to raise issues that should be addressed in a post-conviction petition. On appeal, trial counsel raised issues regarding the admissibility of certain photographs of the victim and the blood spatter evidence adduced by the State.

Trial counsel said that after the close of the State's case-in-chief, he feared the jury would convict the petitioner of first degree murder. He believed that if he had not presented proof in the petitioner's defense, such as the victim's sexual encounter with another woman that night, the jury would have found the petitioner guilty of first degree murder.

The petitioner testified that prior to trial, he filed two pro se motions to have trial counsel removed from the case. The petitioner was particularly concerned after counsel "told me that I should have just done everybody a favor and killed myself too." The petitioner stated that the trial court failed to address the motions; accordingly, the petitioner filed a

motion to recuse the judge. The trial court denied his motion.

The petitioner said that he talked with trial counsel about hiring a blood spatter expert who was not biased in favor of the State; however, trial counsel said the trial court would not allow it. The petitioner acknowledged that it would be difficult for an expert to analyze the blood spatter evidence after the "crime scene had been tainted" by the petitioner's efforts to clean the scene. The petitioner said that he was also told that the trial court would not allow him to hire his own medical expert to examine the victim's body. The petitioner thought trial counsel was "a good person" but that counsel was "overwhelmed" and unable to "tell [the petitioner's] side of what happened." The petitioner said, "I blame the judicial system for convicting me of a murder that never happened."

After the conclusion of the hearing, the post-conviction court issued an order denying relief. The court stated that the petitioner's "primary though somewhat vague complaint[] in this case is that he was denied effective assistance of counsel."[2] However, the court noted that most of the petitioner's testimony "consisted of once again reciting his version of what happened in this case." The trial court explained that sufficiency of the evidence is not a ground for post-conviction relief. The court accredited counsel's testimony that one of the main problems in defending the petitioner stemmed from the petitioner's behavior immediately after the shooting, which was inconsistent with suicide. The court observed that the petitioner complained about "personal comments" trial counsel made to the petitioner; however, the court found that the petitioner "provided no proof that the comments in any way affected trial counsel's performance at trial." Accordingly, the post-conviction court denied the petition for post-conviction relief. On appeal, the petitioner challenges the post-conviction court's ruling.

---

[2] We note that in this state, the right to counsel in a post-conviction setting has been statutorily granted to ensure "that a petitioner asserts all available grounds for relief and fully and fairly litigates these grounds in a single post-conviction proceeding." Leslie v. State, 36 S.W.3d 34, 38 (Tenn. 2000). When the post-conviction court appointed counsel for the petitioner, it ordered counsel "to review the petition, consult with the petitioner, and investigate all possible constitutional grounds for relief for the purpose of filing an amended petition, if necessary." See Tenn. Sup. Ct. R. 28, §6(C)(2); see also Tenn. Code Ann. § 40-30-107(b)(2). The court further ordered that "counsel shall file a notice [in the event that] no amended petition will be filed." See Tenn. Sup. Ct. R. 28, §6(C)(2); see also Tenn. Code Ann. § 40-30-107(b)(2). However, counsel failed to file either an amended petition or a notice stating that no amended petition would be filed, despite the fact that, as the post-conviction court noted, the petitioner's pro se complaints were "somewhat vague." Regardless, a petitioner does not have a right to the effective assistance of counsel in post-conviction proceedings. See Stokes v. State, 146 S.W.3d 56, 60 (Tenn. 2004); House v. State, 911 S.W.2d 705, 712 (Tenn. 1995). Because the petitioner was afforded a full and fair hearing, during which he was given the opportunity to be heard at a meaningful time and in a meaningful manner, his due process rights were not infringed. See House, 911 S.W.2d at 711.

## II. Analysis

To be successful in a claim for post-conviction relief, a petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

On appeal, the petitioner complains that his relationship with trial counsel was "rocky," particularly after counsel told him that he "should have killed himself." The petitioner also argues that trial counsel's failure to hire expert witnesses left the defense unable to rebut the State's forensic evidence. He argues that counsel "should have at least made an effort to obtain these experts, who may or may not have backed up [the petitioner's] story."

The post-conviction court accredited the testimony of trial counsel, who explained that his question about the petitioner's decision to not commit suicide was during a discussion about whether the petitioner should testify at trial. Counsel was concerned that the jury would see the statement as "self-serving." The post-conviction court noted that nothing in the record indicated that trial counsel's performance was affected by the inquiry. Moreover, the post-conviction court found the petitioner's complaints regarding expert witnesses to be without merit. We agree with the post-conviction court that the petitioner failed to meet his burden of establishing that his trial counsel was ineffective.

## III.  Conclusion

In sum, we conclude that the petitioner did not establish that counsel was ineffective. Accordingly, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE

-7-